### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

EDWARD BURNS,
                    Plaintiff,
        v.
                                          Case No. 13-1371-RDR
TRANSDIGM GROUP, INC.
d/b/a ELECTRMECH TECHNOLOGIES,
            and
WESTERN SKY INDUSTRIES, LLC
d/b/a ELECTROMECH TECHNOLOGIES,

                    Defendants.


<u>MEMORANDUM AND ORDER</u>

In this action, plaintiff contends that he was terminated from his employment with Electromech Technologies on January 2, 2013 because of his age. Plaintiff asserts a claim under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 <u>et</u> <u>seq</u>. This matter is presently before the court upon defendants' motion for summary judgment.

I.

Plaintiff was born on August 16, 1948. He is currently 66 years old. Plaintiff was hired on March 19, 2005 by Electromech Technologies as its Director of Supply Chain. In 2007, he was moved to the position of Director of Costing and Contracting. On February 11, 2011, plaintiff was promoted to the position of Director of Finance. He reported to Doris Harms, President of Electromech. As Director of Finance, plaintiff was responsible for the financial well-being of Electromech, protecting its assets, reporting information on a timely basis to finance and ensuring the financial stability of the company. Plaintiff was also responsible

1

for the work of nine people who reported directly to him.   On January 2, 2013, plaintiff was terminated from his position as Director of Finance. Plaintiff was replaced by Jeffrey Keller, who is in his thirties.

In their motion for summary judgment, the defendants raise three arguments: (1) plaintiff's claim against TransDigm Group, Inc. (TDG) d/b/a Electromech Technologies must fail because it was not plaintiff's employer and it was not an employer under the ADEA; (2) plaintiff's claim against Western Sky Industries, LLC d/b/a Electromech Technologies is time-barred; and (3) plaintiff has failed to establish that he was terminated from his employment because of his age.

II.

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. City of Herriman v. Bell, 590 F.3d 1176, 1181 (10th Cir. 2010). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 255 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001)(citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)).   An issue of fact is "genuine"

2

if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." _Adler_, 144 F.3d at 670 (citing _Anderson_, 477 U.S. at 248).

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. _Spaulding v. United Transp. Union_, 279 F.3d 901, 904 (10th Cir. 2002), _cert. denied_, 537 U.S. 816 (2002)(citing _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-23 (1986)). In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the non-movant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. _Adams v. Am. Guar. & Liab. Ins. Co._, 233 F.3d 1242, 1246 (10th Cir. 2000)(citing _Adler_, 144 F.3d at 671); _see also_ _Kannady v. City of Kiowa_, 590 F.3d 1161, 1169 (10th Cir. 2010).

Once the movant has met the initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." _Anderson_, 477 U.S. at 256; _Celotex_, 477 U.S. at 324; _Spaulding_, 279 F.3d at 904 (citing _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 587 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. _Anderson_, 477 U.S. at 256; accord _Eck v. Parke, Davis & Co._, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." _Mitchell v. City of Moore, Okla._, 218 F.3d 1190, 1197-98 (10th Cir. 2000)(quoting _Adler_, 144 F.3d at 670-71); _see Kannady_,

3

590 F.3d at 1169.

A defendant has the burden of proof on an affirmative defense, and thus in moving for summary judgment on the affirmative defense, "[t]he defendant ... must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). Once the defendant makes this initial showing, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact." Id. If after the evidence is viewed in the light most favorable to the plaintiff, the plaintiff cannot meet this burden, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." Id.

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). When examining the underlying facts of the case, the court is cognizant that it may not make credibility determinations or weigh the evidence. Matsushita, 475 U.S. at 587.

### III.

The court begins with the very puzzling issue of who employed the plaintiff and whether plaintiff has sued the correct defendant. The defendants initially contend that plaintiff's claim against TDG must fail because it is not plaintiff's employer and it is not an employer under the

4

ADEA.  The defendants suggest that TDG employs no employees since it is a holding company and Electromech's indirect parent.  The defendants point out that plaintiff was hired by Electromech, paid by Electromech, reported to Electromech's President, and was eventually terminated by Electromech's President.  Finally, the defendants argue that TDG is not liable for acts of its subsidiary under the "integrated enterprise test" established by the Tenth Circuit.

The defendants next contend that plaintiff's claim against Western Sky Industries is barred because plaintiff did not timely assert his claim against it.  The defendants also argue that equitable tolling does not save plaintiff's claim against Western Sky Industries.  Finally, the defendants suggest that the plaintiff's addition of Western Sky Industries in an amended complaint does not relate back to the time of plaintiff's initial complaint.

The facts as provided by the parties on these issues are as follows: In December 2010, TDG's subsidiary, TransDigm, Inc., acquired McKechnie Aerospace Holdings, Inc.  One of McKechnie's indirect subsidiaries was Western Sky Industries, LLC, which had several operating units including Electromech Technologies.  On February 6, 2013, plaintiff filed a complaint of discrimination with the Kansas Human Rights Commission against Electromech Technologies.  He later received a right-to-sue letter.  He filed his complaint against TDG d/b/a Electromech Technologies in this court on October 1, 2013.  In his complaint, he asserted the following:

> The defendant Transdigm Group, Inc is a corporation, duly authorized and existing under the laws of the state of Delaware. It is doing business in Kansas through a wholly owned subsidiary, Electromech Technologies.

In its answer, TDG claimed that it was not plaintiff's employer.  TDG further alleged that Western Sky Industries was doing business as Electromech Technologies.  It admitted that plaintiff's employment with Western Sky Industries, LLC d/b/a Electromech Technologies ended on January 2, 2013.

Based upon the responses of TDG, plaintiff sought to amend his complaint to add Western Sky Industries d/b/a Electromech Technologies as a defendant.  TDG argued in response that the motion should be denied because it was futile.  TDG contended plaintiff's claim was time-barred because he had failed to sue Western Sky Industries within ninety days of receiving his right-to-sue letter.  Magistrate Sebelius granted the motion to amend, finding that TDG had failed "to come forward with any evidence regarding the nature and extent of Western Sky Industries' knowledge or lack of knowledge regarding this action."

A.

The court begins with TDG's contention that it is neither plaintiff's employer nor an employee under the ADEA.  In roughly three pages of argument, TDG suggests that it was not plaintiff's employer because plaintiff was hired by Electromech, paid by Electromech, reported to Electromech's President, and was terminated by Electromech's President.  TDG then suggests that it cannot be held liable under the "integrated enterprise test" because (1) the mere fact that Electromech's President reported to Pete Palmer, TDG's Executive Vice-President, is insufficient to show an interrelation of operation; (2) plaintiff cannot demonstrate any centralized control of labor relations between TDG and Electromech; (3) TDG and Electromech share no common directors or operational managers;

and (4) the mere existence of a parent-subsidiary relationship is not enough to impose liability on it.

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate because of age against an individual at least forty years of age with respect to compensation, terms, conditions, or privileges of employment. See 29 U.S.C. §§ 623(a)(1), 631(a). Liability under the ADEA is limited to "employers." See Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A., 104 F.3d 1256, 1263 (11th Cir. 1997). A defendant must have "20 or more employees" to qualify as an "employer" covered by the ADEA. 29 U.S.C. § 630(b). The employee numerosity threshold for establishing "employer" status under the ADEA is not jurisdictional; rather, it is merely an element of a claim for relief. See Hackworth v. Progressive Cas. Ins. Co., 468 F.3d 722, 726 n. 4 (10th Cir. 2006).

The Tenth Circuit has referred to two tests that are applicable when determining which of two entities is a plaintiff's employer: the joint-employer test and the single-employer test. Bristol v. Bd. of County Com'rs of County of Clear Creek, 312 F.3d 1213, 1218 (10th Cir. 2002). Under the single-employer doctrine, a plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer. Id. In applying the single-employer test, a court weighs four factors: interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. Id. at 1220(quotation omitted). The third factor--centralized control of labor relations--is the most important. Id. Under the joint-employer test, a plaintiff who is the employee of one entity may seek to hold another

entity liable by claiming that the two entities are joint employers. _Id_. In applying this test, courts examine if the entities "share or co-determine those matters governing the essential terms and conditions of employment." _Id_.(quotation omitted). "In other words, courts look to whether both entities 'exercise significant control over the same employees.'" _Id_.(quotation omitted). As a general rule, determining whether an entity qualifies as an employer is a fact issue for the jury. _Id_. at 1221.

TDG focused on the single-employer theory of liability, arguing that TDG and Electromech are not a single employer. TDG relies upon evidence that plaintiff has not demonstrated any centralized control of labor relations between the two entities. TDG further argues that TDG and Electromech share no common directors or operational managers. Finally, TDG contends that even though Electromech is "an indirect, wholly-owned subsidiary of [TDG]," this factor alone does not establish parent liability.

Plaintiff, on the other hand, has suggested that either theory of liability--the single-employer or the joint employer--could apply here. Nevertheless, plaintiff has limited its argument to the single-employer test. Plaintiff points out there is evidence that TDG was involved in both the decision to promote him to Director of Finance and the determination to terminate him. Plaintiff suggests this evidence shows a centralized control of labor relations.

The issues raised by the parties are troubling because there are many unanswered questions. The complexity of the relationship between TDG and other entities including Electromech is shown by the following answer

of Mr. Palmer, the Executive Vice-President at TDG, in his deposition when he was asked about the relationship of the companies:

> I -- I wouldn't claim to know.  It's complicated. They have charts that show a very complicated corporate structure.  Due to the nature of the acquisitions, that's a legal and a tax decision. That's not something I would be able to speak to with any clarity.

The court has thoroughly examined the record concerning the relationship between TDG and Electromech.  The court is not persuaded that TDG is entitled to summary judgment on the issue of whether it was an employer of plaintiff.  There is evidence before the court upon which a jury could conclude that TDG exercised sufficient control over the plaintiff to be deemed his employer.  Plaintiff has produced evidence that TDG approved the decision to terminate him.  Plaintiff has further produced evidence that TDG was involved in the decision to hire plaintiff at Electromech.  The evidence on some of the other factors weighs in favor of TDG, but a plaintiff is not required to establish every factor in order for a court to find two entities constitute a single employer. See Esmark, Inc. v. N.L.R.B., 887 F.2d 739, 753 (7th Cir. 1989).  The evidence before the court provides some indication that TDG exercised common control of labor relations, the most important factor in the single employer theory. Given this evidence and the many issues that remain undeveloped, the court believes that this issue must be decided at trial.

B.

The court next considers the defendants' argument that plaintiff's amended complaint which added Western Sky Industries as a defendant does not relate back to the time of the filing of his initial complaint.  As a result, the defendants contend that plaintiff's ADEA claim against Western

Sky Industries is barred by plaintiff's failure to file suit within ninety days of the receipt of his right-to-sue letter.

A plaintiff must file an ADEA claim within ninety days of receiving an EEOC right-to-sue notice. 29 U.S.C. § 623. There is nothing in the record indicating when plaintiff received his right-to-sue letter, but there is evidence that the EEOC charge was mailed on August 2, 2013. Plaintiff filed his complaint here on October 1, 2013. Defendants have suggested that he must have received it prior to that time, and plaintiff has not suggested otherwise. In the original complaint, plaintiff named TDG d/b/a Electromech as the defendant. In his subsequent amended complaint, which was filed on February 26, 2014, he named Western Sky Industries d/b/a Electromech Technologies as an additional defendant. Western Sky Industries was not named as a defendant until well after the ninety-day period had expired. The ADEA claim against Western Sky Industries is thus timely only if the amended complaint adding it as a defendant relates back to the original filing date.

Rule 15(c)(1) provides that amended pleadings may "relate back" to the date the original pleading was filed where:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed.R.Civ.P. 15(c)(1)(C).

The Supreme Court recently explained that "relation back under Rule 15(c)(1)(C) depends on what the [new] party knew or should have known, not

10

on the amending party's knowledge or its timeliness in seeking to amend the pleading." Krupski v. Costa Crociere S. p. A., 560 U.S. 538 (2010). In light of Krupski, the only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original complaint are: first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead of or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself.

The defendants have acknowledged that Western Sky Industries d/b/a Electromech had notice of this lawsuit. However, they contend that they have now demonstrated that plaintiff's amended complaint should not relate back to the original complaint. In support of this argument, they point to the affidavit of Jeffrey Zielinski, President of Western Sky Industries. He suggests he had no information that plaintiff's choice of TDG was unintentional or a mistake.

In what can only be described as an artfully drafted affidavit, Mr. Zielinski has stated that he "possessed no information to suggest that Plaintiff's choice of TransDigm Group as a defendant was unintentional or a mistake." The court fails to see how Mr. Zielinski can contend that he was not aware or should not have been aware that plaintiff's choice of TDG as the defendant was not based on a mistake concerning the proper party's identity. Mr. Zielinski was aware that the lawsuit had been filed. He was further aware that plaintiff worked for his company and was terminated by his company. He further knew that plaintiff was asserting he was

terminated because of his age in violation of the ADEA when he was terminated from his position of Director of Finance.   There is little question here that Mr. Zielinski "should have known" that Electromech or Western Sky Industries was the proper party but for a mistake concerning the proper party's identity.   The court further notes that Western Sky Industries has failed to show how it was prejudiced by its omission from the original complaint.   Since the requirements of Rule 15(c)(1)(C) are met, plaintiff's amended complaint relates back and Western Sky Industries was timely sued.

IV.

Under the ADEA, an employer may not "discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).   The ADEA requires "but-for" causation; therefore, a plaintiff claiming age discrimination must establish by a preponderance of the evidence that his employer would not have taken the challenged employment action but for the plaintiff's age.   Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009); see also Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278 (10th Cir. 2010)("Gross does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action.").

A plaintiff may prove a violation of the ADEA either by direct evidence of discrimination, or by following the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).   Without proof of direct evidence of discrimination, the court must consider the burden-shifting framework announced in McDonnell Douglas. Twigg v. Hawker

Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011). Under this framework, a plaintiff must first establish a prima facie case of discrimination by showing (1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination. E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007). If a plaintiff can establish a prima facie case, the burden shifts to the employer to assert a legitimate nondiscriminatory reason for its actions. If it can do so, the burden shifts back to the plaintiff to introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent. Simmons v. Sykes Enters., 647 F.3d 943, 947 (10th Cir. 2011).

A.

The court shall engage in a brief discussion concerning whether plaintiff has produced any direct evidence of discrimination. This examination shall be limited because neither side has offered argument about this issue. Both sides proceeded directly to application of the McDonnell Douglas test. Nevertheless, plaintiff did offer some evidence in an affidavit that could conceivably be construed as direct discrimination. In his affidavit, plaintiff stated: "Doris Harms made repeated comments about employees' ages. . . .Harms made repeated disparaging comments about old workers."

In Tabor v. Hilti, Inc., 703 F.3d 1206, 1216 (10th Cir. 2013), the Tenth Circuit explained when comments in the workplace constituted direct evidence of discrimination:

> Comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs. Ramsey [v. City &

13

Cnty. Of Denver], 907 F.2d [1004] at 1008 [(10th Cir. 1990)]. We also have explained that discriminatory statements do not qualify as direct evidence if the context or timing of the statements is not closely linked to the adverse decision. Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1118 (10th Cir.2007). Furthermore, if the content and context of a statement allow it to be plausibly interpreted in two different ways—one discriminatory and the other benign—the statement does not qualify as direct evidence. Id.

Plaintiff has failed to produce any evidence concerning the context or timing of these statements.  Without such evidence, the court cannot consider them as direct evidence.  We can, however, consider them as circumstantial evidence.

B.

With this decision, the court turns its attention to the McDonnell Douglas steps.  In order to make out a prima facie case of wrongful discharge under the ADEA, a plaintiff must show: (1) he is within the protected age group; (2) was doing satisfactory work; (3) was discharged; and (4) was replaced by someone younger. See Rivera v. City & County of Denver, 365 F.3d 912, 920 (10th Cir. 2004). The burden at this stage is "'not onerous.'"  Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005)(quoting Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The defendants do not challenge that plaintiff has satisfied three of the requirements for a prima facie case but they do contend he has not shown that he was performing satisfactory work.  To meet his burden, plaintiff need only "introduc[e] some evidence of good performance." Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1420 (10th Cir. 1991); accord Paup v. Gear Products, Inc., 327 Fed App'x 100, 109 (10th Cir. 2009)("[A]t the prima facie stage Ms. Shuffitt need only produce 'some

14

evidence of good performance' to carry her burden."). Plaintiff is not required to show that his performance was flawless. See Denison, 941 F.2d at 1421. The court is persuaded that plaintiff has produced sufficient evidence to meet his prima facie burden on the performance of satisfactory work.

C.

The court next considers whether defendant has articulated a legitimate, non-discriminatory reason for termination. The defendants contend that plaintiff was fired due to poor performance. The defendants assert that: (1) plaintiff's department submitted incorrect booking reports; (2) one of plaintiff's employees failed to copy Electromech's President on e-mails sent to TDG; (3) plaintiff's department was involved with funding issues that arose concerning financial transactions involving one of Electromech's operating units in Mexico; and (4) problems were encountered with 401k loans for which plaintiff took responsibility.

There is little dispute that poor performance is a legitimate, non-discriminatory reason for termination. See Bertsch v. Overstock.com, 684 F.3d 1023, 1029 (10th Cir. 2012)("Poor performance, to be sure, it the quintessential legitimate, nondiscriminatory reason for termination."). Given defendants' response, the court must proceed to determine if plaintiff can establish pretext.

D.

A plaintiff can withstand summary judgment if he presents evidence sufficient to raise a genuine dispute of material fact regarding whether the defendant's articulated reason for the adverse employment action is pretextual. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133,

147-49 (2000). "Pretext exists when an employer does not honestly represent its reasons for terminating an employee." Miller v. Eby Realty Group LLC, 396 F.3d 1105, 1111 (10th Cir. 2005). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Rivera, 365 F.3d at 925(internal quotation marks and brackets omitted). "Pretext may also be shown by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated." Jaramillo v. Adams Cnty. Sch. Dist. 14, 680 F.3d 1267, 1269 (10th Cir. 2012). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. Satterlee v. Allen Press, Inc., 443 F.Supp.2d 1236, 1245 (D.Kan.2006). In examining whether defendant's proffered reason is pretextual, the court must "look at the facts as they appear to the person making the decision to terminate plaintiff." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000). The court's role is not to second guess an employer's business judgment. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004).

The defendants contend that after plaintiff was promoted to the Director or Finance, Electromech executives, including President Harms, began noticing a "lack of follow through and an inability to manage employees." They point out that in early 2012 there were incorrect booking errors and plaintiff acknowledged that the errors were his fault. They also note that in February 2012 one of plaintiff's employees had

16

failed to copy Ms. Harms on an e-mail after Ms. Harms had given direct instructions to do so.   They next indicate that in May to June 2012 a funding issue arose with some financial transactions involving one of Electromech's operating units in Mexico and a hedging endeavor involving pesos.   They note that plaintiff took responsibility for these problems. Finally, they point out that problems began to occur with the company's 401k program in October 2012, and plaintiff again took responsibility for these errors. They contend that plaintiff was terminated on January 2, 2013 because of these problems, not plaintiff's age.   In further support of their position that age was not a factor in the termination, the defendants point out that plaintiff was terminated by the same individual who promoted him only two years earlier.

Plaintiff counters that the defendants' alleged reasons for firing him are riddled with "weaknesses, implausibilities, inconsistencies, and contradictions."   Plaintiff notes that Ms. Harms said the following when she terminated him: "You have done everything I have asked of you."   He further states that his evaluations show that he had been a good employee. He also suggests that he has presented evidence that he was a hard-working employee who sometimes took the blame when other departments or employees made mistakes.   He notes that several employees who made some of the mistakes noted by the defendants continue to be employed at Electromech. He points out that the matter involving the "pesos" was a trivial matter that has been "blown up by the defendants" as a pretext to fire him.   He also notes that the evidence shows that the 401k problems were caused by the Human Relations Department.   He indicates that he sought to have Ms. Harms transfer the 401k responsibilities to the Finance Department so that

they could be fixed. He indicates that he offered his resignation for this problem because he thought he was "better situated than any of his employees in his department to be out of work." He suggests that the supervisor of the Human Relations Department was responsible for this problem but he was not terminated.

The court needs to consider the following matters in determining whether plaintiff has offered sufficient evidence of pretext to avoid summary judgment: (1) the age-related comments of Ms. Harms; (2) the disparate treatment contentions raised by plaintiff; (3) the alleged false reasons offered by the defendants for plaintiff's termination; (4) the statistical evidence offered by plaintiff; (5) evidence that other employees were terminated because of their age; and (6) the fact that the same person who allegedly terminated plaintiff for age discrimination also promoted him just two years prior to the termination. Some of these matters tilt in favor of the defendants while others provide some support for plaintiff's claim of age discrimination.

1. Age-Related Comments

In his affidavit, plaintiff has indicated that Ms. Harms, the individual that the defendants claim made the termination decision, made repeated comments about employees' ages. He further states that she made "repeated disparaging comments about old workers." There is little question that discriminatory remarks may serve as evidence of pretext because they indicate the presence of animus toward a protected group. Nevertheless, isolated or ambiguous comments may be too abstract to support such an inference. Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir. 2000).

18

Given the lack of specificity concerning these statements, the court has some reservations in finding them sufficient to support a finding of pretext.  The court notes that plaintiff has failed to indicate the exact nature of the comments and the timing of those comments.  This causes the court some concern about whether they support an inference of discrimination.  But, plaintiff has stated that they were made by the individual who allegedly terminated him, Ms. Harms.  Accordingly, the court does believe that these allegations provide some circumstantial evidence of pretext.

2. False Reasons

Evidence that a defendant's stated reason is false can support a finding of pretext.  Kendrick, 220 F.3d at 1230. In determining whether the proffered reason for a decision was false, this court "examine[s] the facts as they appear to the person making the decision." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1166 (10th Cir. 2007)(quotation and emphasis omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." Rivera, 365 F.3d at 924-25(quotation omitted).

Plaintiff has provided evidence that Ms. Harms, the alleged decision-maker here, told him the following when he was terminated: "You have done everything I have asked of you."  She further told him that she did not make the decision to terminate him.  She said that the decision came from "corporate."  Plaintiff suggests that this evidence shows that Ms. Harms gave false reasons for his termination.  He also contends that this evidence shows she was not the decision-maker.  The defendants

19

correctly point out that Ms. Harms has denied making these statements in
his deposition.   They further argue, without analysis, that these
statements do not demonstrate that the reasons that Ms. Harms provided for
termination were pretext and are not evidence that she did not make the
decision to terminate plaintiff.

The court believes that these statements do provide some evidence of
pretext.   The first statement appears to indicate that Ms. Harms did not
believe that plaintiff had engaged in poor performance.   Thus, the
statement suggests that the reasons she later offered in support of the
termination were not honestly held.   The court recognizes that Ms. Harms
has denied making this statement, but at this stage, the court must view
the evidence in the light most favorable to the plaintiff.   At the summary
judgment stage, it is not the court's province to make credibility
determinations.   Utah Lighthouse Ministry v. Found. for Apologetic Info. &
Rsch., 527 F.3d 1045, 1050 (10th Cir. 2008).   The conflicting testimony of
plaintiff and Ms. Harms introduces a determination of credibility,
precluding entry of summary judgment, and also creates an inference that
defendants' proffered reason for terminating plaintiff's employment was
not based in fact and instead was merely pretextual.

The court also believes that the evidence shows that Ms. Harms was
not the decisionmaker.   Again, this view is based upon an examination of
the statement in the light most favorable to the plaintiff.

3. Disparate Treatment

A plaintiff may show pretext "by providing evidence that he was
treated differently from other similarly-situated, non-protected employees
who violated work rules of comparable seriousness."   Kendrick, 220 F.3d

at 1232.   Trivial differences in treatment are insufficient to show pretext.   See id.   In addition, a plaintiff's mere speculation of differential treatment is also insufficient; rather a plaintiff must produce "specific facts showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988)(holding mere conjecture insufficient to support an allegation of pretext); see also Doan v. Seagate Tech., Inc., 82 F.3d 974, 977 (10th Cir. 1996)(holding plaintiff's "[s]peculation ... will not suffice for evidence").

Plaintiff has offered several examples of disparate treatment.  He has noted that supervisors Dave Yannarella and Chad Ohl supervised departments that made mistakes but were not terminated.  The court is not persuaded that either of these examples provide sufficient evidence of disparate treatment.

Chad Ohl supervised the HR Department that was accused of making mistakes concerning the 401k program.  One of his employees was in fact terminated for problems with this program.  Plaintiff was also allegedly terminated for the problems with this program.  The fact that Chad Ohl was not terminated might provide evidence of disparate treatment except that plaintiff has indicated that Ohl's age is "early to mid 40s." Since Ohl is a member of the protected class, he cannot be used to demonstrate disparate treatment.

Plaintiff has failed to offer any additional evidence concerning Dave Yannarella.  Plaintiff has failed to set forth Mr. Yannarella's age or that the offense that was committed by his Department was of comparable

21

seriousness to that involving the 401k problem.  Without that evidence, the court cannot find that plaintiff has provided evidence that he was treated differently from other similarly situated, non-protected employees who violated work rules of comparable seriousness.

4. Statistical Evidence

Plaintiff has offered some statistical evidence that he believes shows that the defendants discriminated against him based upon age.  He states in his affidavit: "In the period after TDG assumed control of Electromech, 77% of the employees who were terminated were over the age of 40 and only 23% were below the protected age."

For statistical evidence to be relevant to the issue of pretext, the evidence must show a significant disparity and eliminate nondiscriminatory reasons for such disparity.  See Fallis v. Kerr-McGee Corp., 944 F.2d 743, 746 (10th Cir. 1991); Furr v. Seagate Technology, 82 F.3d 980, 986-87 (10th Cir. 1996).  Plaintiff's statistical evidence fails to control for nondiscriminatory reasons for disparity.  While statistical evidence is an acceptable means of proving discrimination, such "[s]tatistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext." Doan, 82 F.3d at 979.  Plaintiff's statistical evidence does not permit an inference of pretext because it fails to eliminate nondiscriminatory explanations for disparate treatment. Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994).

5. Evidence that Others were Terminated because of their Age

Plaintiff has also suggested that he is aware of "at least three employees in their mid 60s who were forced out because of their age and who cannot comment on it because they signed severance agreements that did

22

not allow them to discuss the circumstances of their termination." The defendants contend that the court should not consider this evidence because it constitutes hearsay.

The court must agree. Affidavits must contain certain indicia of reliability. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings[; they] must be based on more than mere speculation, conjecture, or surmise." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)(citation omitted). Information presented in the nonmovant's affidavit must be "based on personal knowledge and [must set] forth facts that would be admissible in evidence." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1213 (10th Cir. 2002)(citation omitted)(quoting Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995)) (internal quotation marks omitted).

Plaintiff states in a conclusory fashion that he is "aware" of employees who were forced out by the defendants due to their age. However, he has not provided specific names of these employees and he has not provided any information on how he became "aware" of this information. As a result, these matters must be considered hearsay, Fed.R.Evid. 801(c), and therefore not admissible evidence. Fed.R.Cvi.P. 56(c)(1)(B).

6.   Same Individual Promoted and Fired Plaintiff within Short Period of Time

The defendants have also suggested that the court should not infer that age discrimination was a factor in the decision to terminate plaintiff because the same individual, Ms. Harms, promoted plaintiff only two years prior to the termination.  See Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2nd Cir. 1997)(where hirer and firer are same individual and termination occurs in short time span, a strong inference

exists that discrimination was not determining factor in termination). However, as noted previously, there is conflicting evidence concerning who actually fired plaintiff.   Thus, the court cannot make the inference suggested by the defendants.

V.

As discussed in this opinion, plaintiff has provided some evidence that creates an inference of age discrimination and some evidence that does not.   After a thorough review of the entirety of the evidence presented, the court finds that plaintiff has presented evidence that is sufficient to create a triable issue as to whether the defendants' proffered reason for terminating him was a pretext for age discrimination. Accordingly, defendants' motion for summary judgment shall be denied.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. # 57) be hereby denied.

**IT IS SO ORDERED.**

Dated this_1ST day of May, 2015, at Topeka, Kansas.


                              S/RICHARD D. ROGERS
                              Richard D. Rogers
                              United States District Judge